# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
### WESTERN DIVISION

**CRAIN CDJ LLC,** *et al*.                                                    **PLAINTIFFS**

**v.**                        **4:08CV03605-WRW**

**REGENCY CONVERSIONS LLC** *et al*.                             **DEFENDANTS**

## ORDER

Pending is Defendant Knight's and Defendant Petrie's Motion for Ruling (Doc. No. 42).[1]

Plaintiffs have responded[2] and Defendants have replied.[3] For the reasons set out below,

Defendant Knight's and Defendant Petrie's Motion to Dismiss is DENIED.

## I. BACKGROUND[4]

Plaintiffs assert that Defendant Regency modifies previously assembled and

manufactured motor vehicles and then sells the vehicles to automobile dealerships throughout

the United States.[5] Defendant Regency, a Texas corporation, allegedly sold and delivered to

Plaintiffs automobiles to be resold from Plaintiffs' lots.[6] Plaintiffs contend that Regency acted

---

[1]Defendants' Motion for Ruling relates back to Defendants' Motion to Dismiss (Doc. No. 25).

[2]Doc. Nos. 30, 44.

[3]Doc. No. 33.

[4]The facts in the Background section have been reproduced, in part, from Doc. No. 19.

[5]Doc. No. 14.

[6]*Id*. It appears that Regency sold and delivered 71 automobiles to Plaintiff, but that Plaintiff could not sell 35 of the 71 vehicles. Doc. No. 14.

contrary to industry practice by selling the automobiles -- earlier year models -- for the price of current year models.[7]

Plaintiffs assert that no formal sales agreement ever existed between the parties, and that Regency negotiated with a Crain employee who had no authority to purchase the vehicles on Plaintiffs' behalf.[8] Plaintiffs also allege that Defendants Knight and Petrie, Regency employees, paid former Crain employee Daryl Stone ("Stone"), through checks delivered to Stone's personal address, kickbacks to induce Stone to purchase automobiles from Regency.[9]

A November 7, 2008, Order dismissed Counts One, Two, and Three of Plaintiff's Amended Complaint.[10] Recently default judgment was entered against Defendant Regency.[11]

Defendants Knight and Petrie ("Defendants") filed a motion to dismiss for lack of personal jurisdiction and assert that they do not have the required minimum contacts for jurisdiction to exist with respect to the remaining counts of Plaintiffs' Amended Complaint.[12] Plaintiffs contend that this Court may properly exercise personal jurisdiction over Defendants.[13]

---

[7]*Id.*

[8]*Id.*

[9]*Id.*

[10]Doc. No. 19.

[11]Doc. No. 41.

[12]Doc. No. 25.

[13]Doc. No. 31.

2

## II.      DISCUSSION

When a defendant challenges a federal court's jurisdiction, the plaintiff has the burden of proving that the court's jurisdiction is proper by making a *prima facie* showing that jurisdiction exists.[14] A plaintiff's burden for proving jurisdiction is less than by the preponderance of the evidence until trial, or until a special evidentiary hearing is held.[15] In deciding a motion to dismiss for lack of jurisdiction, "[i]f the district court does not hold a hearing and instead relies on pleadings and affidavits . . . the court must look at the facts in the light most favorable to the nonmoving party."[16]

In establishing jurisdiction, a federal court sitting in diversity must consider whether the forum state's long-arm statute is satisfied, and whether jurisdiction in consistent with the Due Process Clause.[17] The Arkansas long-arm statute provides, in part, that "[t]he courts . . . shall have personal jurisdiction of all persons, and all causes of action or claims for relief, to the maximum extent permitted by the due process of law clause of the Fourteenth Amendment of the United States Constitution."[18] Accordingly, the analysis here is limited to whether jurisdiction over Defendants would violate the Due Process Clause.

---

[14]See *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072-73 (8th Cir. 2004); *Scullin Steel Co. v. Nat'l. Ry. Utilization Corp.*, 676 F.2d 309, 311 (8th Cir. 1982).

[15]See *Dakota Industries, Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1387 (8th Cir. 1991) (citing *Cutco Ind. v. Naughton*, 806, F.2d 361, 365 (2d Cir. 1986).

[16]*Id*. at 1388 (citing *Watlow Elec. Mfg. v. Patch Rubber Co.*, 838 F.2d 999, 1000 (8th Cir. 1988)).

[17]See *Dever*, 380 F.3d at 1072-73.

[18]Ark. Code Ann. § 16-4-101 (2008).

Under the Due Process Clause, a defendant must anticipate that, because of his conduct or contact with a forum state, he could be brought to court there.[19] The defendant must have minimum contacts with the forum state so that asserting jurisdiction would "comport with 'fair play and substantial justice.'"[20] Generally, if a defendant directed his actions to a forum state, and injuries arise from those actions, the defendant can expect to be haled into court in the forum state.[21]

The United States Supreme Court recognized that jurisdiction over an agent-defendant may be proper when the plaintiff alleged an intentional tort.[22] In *Calder v. Jones*, the plaintiff, a California resident, sued defendants, Florida residents employed by the National Enquirer, for libel over an article they wrote about the plaintiff.[23] The defendants argued that they wrote the article as employees of the National Enquirer, that the article had been written and edited in Florida, and that they had insufficient contacts with California for personal jurisdiction there to be proper.[24] The California Court of Appeal found that jurisdiction was proper because the defendants committed an intentional tort against the Californian plaintiff.[25] The United States Supreme Court affirmed, writing:

---

[19] *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

[20] *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945)).

[21] *Id.* at 472-73.

[22] See *Calder v. Jones*, 465 U.S. 783, 791 (1984).

[23] *Id.* at 786.

[24] *Id.* at 789.

[25] *Id.* at 787-88.

4

Petitioners are not charged with mere untargeted negligence. Rather, their intentional, and allegedly tortious, actions were expressly aimed at California. Petitioner South wrote and petitioner Calder edited an article they know would have a potentially devastating impact upon respondent. And they knew the brunt of that injury would be felt respondent in the state in which she lives and works and in which the National Enquirer has its largest circulation. Under the circumstances, petitioners must 'reasonably anticipate being haled into court there' to answer for the truth of the statements made in their article. An individual injured in California need not go to Florida to seek redress from persons who, though remaining in Florida, knowingly cause the injury in California.

The Eighth Circuit, of course, follows *Calder*.[26] In *Dakota Industries, Inc. v. Dakota Sportswear, Inc.*, the Eighth Circuit Court of Appeals recognized the Eighth Circuit's traditional *Land-O-Nod*[27] factors used to determine whether jurisdiction was proper under the due process clause, but "note[d] that *Calder* requires the consideration of additional factors when an intentional tort is alleged."[28] In *Dakota*, the Court of Appeals considered the *Calder* "effects test" and reversed the District Court's dismissal for lack of personal jurisdiction.[29]

Plaintiffs contend that Defendants paid Stone for vehicles ordered by Plaintiffs from Regency.[30] Plaintiffs maintain that while some payments were referred to as "rebates," the payments were from Regency to Stone directly, were without Plaintiffs' knowledge, and were

---

[26]See *Dakota Indus. v. Dakota Sportswear*, 946 F.2d 1384 (8th Cir. 1991); *Hicklin Engineering, Inc. v. Aidco, Inc.*, 959 F.2d 738 (8th Cir. 1992); *Finley v. River North Records*, 148 F.3d 913 (8th Cir. 1998).

[27]*Land-O-Nod Co. v. Bassett Furniture Industries*, 708 F.2d 1338 (8th Cir. 1983). The Land-O-Nod factors are: the nature and quality of the contacts with the forum state; (2) the quantity of the contacts with the forum state; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties.

[28]*Dakota Indus.*, 946 F.2d at 1392.

[29]*Id.*

[30]Doc. No. 14.

sent directly to Stone's personal address -- rather than to Plaintiffs' corporate address to which Regency invoices were customarily sent for payment.[31] Plaintiffs attached to their Amended Complaint copies of eight checks from Regency to Stone at his home address, and on many of the checks are the initials KP -- which Plaintiffs allege is Karl Petrie -- and KK -- which Plaintiffs allege is Kraig Knight.[32] Plaintiffs' Amended Complaint also points out that no documents from Regency ever reflected or referenced that any payments to Stone were made or contemplated.[33]

Plaintiffs' Amended Complaint alleges that Defendants Knight and Petrie "wrongfully and fraudulently (deceitfully) acted and to influence the purchase of Regency vehicles by Crain through kick-back payments to a Crain employee" and that Knight and Petrie "wrongfully conspired with Stone to influence and induce the purchase of Regency vehicles by Crain through kick-back payments to a Crain employee." Plaintiffs' Amended Complaint describes the actions Defendants directed toward Arkansas, the forum state, and made a *prima facie* showing that jurisdiction exists.

### A.    Defendant Knight

In support of Defendants' Motion to Dismiss, Defendant Knight filed an affidavit in which he stated that he worked for Regency for about 16 years.[34] From 1993 to 1999, Knight worked as a salesman in the Dallas -- Ft. Worth area; from 1999 - January 16, 2008, he oversaw

---

[31]*Id.*

[32]*Id.*

[33]*Id.*

[34]Doc. No. 25-2.

the Regency sales department as Sales Manager.[35] Knight asserts that he had "no direct

involvement" in the agreement between Plaintiffs and Regency that is the subject of this case.[36]

Knight alleges that the agreement was approved by Wayne Davis, former president of Regency.[37]

Knight maintains that he initialed the checks or check requests in question "as a simple

ministerial duty as Sales Manager."[38] Knight further states that he has never personally

conducted business in Arkansas, never sold any vehicles to Plaintiffs, and was in Arkansas only

once, about ten years ago, in transit.[39] On January 16, 2008, Knight became President of

Regency.[40]

   Defendant Knight's affidavit supports Plaintiffs' allegation that there was an agreement

between Regency and former Crain employee Stone. Knight does not deny knowledge of the

agreement, but only states that he had no direct involvement in the agreement. I am uncertain

what Knight means by "no direct involvement." Knight did initial the checks attached to

Plaintiffs' Amended Complaint.

   The record suggests that Knight was aware of the alleged kick-back scheme. Knight

initialed the checks from Regency to Stone. Regency sold the cars to Crain, and the cars came to

---

[35]*Id.*

[36]*Id.*

[37]*Id.*

[38]*Id.*

[39]*Id.*

[40]Doc. No. 25-2.

Arkansas. Regency sent Stone the checks to his home address in Arkansas. Plaintiffs allege that they were damaged because of the kick-back scheme.

Under the reasoning of *Calder*, these facts support a finding that this Court may properly exercise personal jurisdiction over Defendant Knight.

### B.    Defendant Petrie

Defendant Petrie also filed an affidavit along with Defendants' Motion to Dismiss.[41] Petrie began working for Regency in October, 2006.[42] Petrie stated that he "had no direct involvement in the agreement between the Plaintiffs and Regency . . . ."[43] Petrie maintains that he inherited the Crain account from another salesperson in about June, 2007.[44] Petrie asserts that neither his signature nor initials appear on the check requests attached to Plaintiffs' Amended Complaint.[45] Petrie came to Arkansas three times at the request of former Crain employee Stone -- twice to assist with "Car Wars" and once Stone asked Petrie to meet him in person in Little Rock before Stone would place an order for more vehicles.[46]

Petrie sold vehicles to Crain, and traveled to Little Rock on at least three occasions at Stone's request. One of Petrie's trips to Little Rock was to meet Stone in person before Stone

---

[41]Doc. No. 25-3.

[42]*Id.*

[43]*Id.*

[44]*Id.*

[45]*Id.*

[46]*Id.*

would place another order. Petrie denies that his initials are on any check requests, but the initials KP appear on several of the requests attached to Plaintiffs' Amended Complaint.

Under the reasoning of *Calder*, these facts support a finding that this Court may properly exercise personal jurisdiction over Defendant Petrie.

In addition to *Calder*, I must consider the *Land-O-Nod factors*, which are: (1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts with the forum state; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties.[47]

Defendant Knight apparently has not traveled to Arkansas. He initialed check request forms as the requesting party, and those checks were then sent to Stone at his home. There are at least six check requests with Knight's signature. The cause of action is directly related to Knight's allegedly sending kick-backs to Stone.

Defendant Petrie traveled to Arkansas at Stone's request at least three times. All of Petrie's stays in Arkansas involved working with Stone, and one visit was specifically a sales visit. Plaintiffs' cause of action is directly related to Petrie's visits to Arkansas as Regency's sale representative.

Arkansas has a valid interest in providing a forum for its residents, especially when there is an allegation of an intentional tort. Arkansas would perhaps be a less convenient forum for Defendants Knight and Petrie, as they apparently live in Texas, but Plaintiffs are in Arkansas.

---

[47]*Land-O-Nod Co.*, 708 F.2d 1338 (8th Cir. 1983).

**CONCLUSION**

Taking *Calder* and all the *Land-O-Nod* factors into consideration, this Court may properly exercise jurisdiction over Defendants Knight and Petrie. Accordingly, Defendant's Motion for Ruling (Doc. No. 42) is DENIED.

IT IS SO ORDERED this 9th day of April, 2009.


/s/Wm. R. Wilson, Jr.
UNITED STATES DISTRICT JUDGE